UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

FISSIONTECH LLC

Plaintiff

v. 25-cv-3174

THE PARTNERSHIPS and
UNINCOPORATED ASSOCIATIONS
IDENTIFED ON SCHEDULE 'A"

Defendants.

------------------------------------x

**PLAINTIFF'S MOTION FOR AN *EX PARTE* TEMPORARY RESTRAINING ORDER, ASSET FREEZE, BIFURCATED SERVICE, EXPEDITED DISCOVERY, AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE.**

# TABLE OF CONTENTS


I. Introduction……………………………………………………………………………1

II. Statement of Relevant Facts……………………………………………………………...3

III. Argument……………………………………………………………………………...3

a. This Court has Jurisdiction Over All the Defendants……………………………..4

b. Plaintiff is Entitled to an *Ex Parte* Temporary Restraining Order………………...7

i. Fissiontech Will Likely Succeed on Its Common Law Trademark Claims…………………………………………………………….....8

ii. Fissiontech Will Likely Succeed on Its False Designation of Origin and Federal Unfair Competition ……………………………………………...9

iii. Fissiontech Will Likely Succeed on Its Deceptive Acts and Practices Unlawful in Violation of the New York General Business Law Claim……………………………………………………………………..10

iv. The Balance of Hardship Favors Plaintiff……………………………....11

v. Enjoining Defendants from Selling Infringing Products Will Serve the Public Interest…………………………………………………………13

c. Plaintiff is Entitled to an Order 1) Preventing the Fraudulent Transfer of Assets And 2) Freezing Defendant's Storefront………………………………………14

i. Defendants' Assets Must be Frozen……………………………………..14

ii. Defendants' User Accounts and Online Storefronts Must be Frozen……16

d. Plaintiff is Entitled to an Order Authorizing Bifurcated Service and Alternative Service Upon the Service Providers and Financial Institutions…………………16

e. Plaintiff is Entitled to an Order Authorizing Expedited Discovery…………...…18

IV. Conclusion…………………………………………………………………...……19

## TABLE OF AUTHORITIES

**Statutes**

Fed. R. Civ. P. 65(b).

Fed. R. Civ. P. 26(d)(1)

15 U.S.C. § 1121

28 U.S.C §§ 13331 and 1338(a)

28 U.S.C. § 1367

28 U.S.C. §§1338(b)

N.Y. Bus. L. §§ 349, 350

28 U.S.C. § 1391

N.Y. C.P.L.R. § 302(a)(1)

15 U.S.C.S. § 1051

**Cases** **Page**

*Best Van Lines, Inc v. Walker*, 490 F.3d 239, 246 (2nd Cir. 2007)……………….……...…………..5

*See Smart Study Co., Ltd. v. lizhiwangluo16*, Nos. 19 Civ. 7725-29, 2020 WL 3639659 (S.D.N.Y. July 6, 2020)……………………………………………...…………………....5

*Pearson Educ., Inc. v. ABC Books, LLC*, No. 19 Civ. 7642 (RA), 2020 WL 3547217 (S.D.N.Y. June 30, 2020)………………………………………………………………………........…...6

*Smart Study Co., Ltd. v. A Pleasant Trip Store*, No. 20 Civ. 1733 (MKV), 2020 WL 2227016 (S.D.N.Y. May 7, 2020) …………………………………………..……………………………6

*Nat'l Hockey League v. Hockey Cup, LLC*, No. 18 Civ. 6597 (DLC), 2019 WL 130576 (S.D.N.Y. Jan. 8, 2019) …………………………………………………………..……….…6

*Mattel, Inc. v. Animefun Store*, No. 18 Civ. 8824 (LAP), 2020 WL 2097624 (S.D.N.Y. May 1, 2020)………………………………………………………………………………….…...6

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009)……………………………………...6

*Audiovox Corp. v. S. China Enter., Inc.*, No. 11-CV-5142 JS GRB, 2012 WL 3061518 (E.D.N.Y. July 26, 2012) ………………………………………………………………………...…...6

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992)…………………………………………………………………………………....…8

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)……………………………………………..8

*Iancu v. Brunetti*, 588 U.S. 388 (2019)………………………………………………...….8

*LBF v. Fareportal, Inc.*, 2014 U.S. Dist. LEXIS 156583 (S.D.N.Y. 2014)…………………...….8

*Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266 (2d Cir. 1999)……………………..8

Standard & Poor's Corp. v. Commodity Exch., Inc., 683 F.2d 704 (2d Cir. 1982)……………….9

*Zatarain's, Inc. v. Oak Grove SmokeHouse, Inc.*, 698 F.2d 786 (5th Cir. 1983)………………….9

*Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722 (S.D.N.Y. 2004)………………………...9

*Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955 (2d Cir. 1996))……………………………9

*Really Good Stuff, LLC v. BAP Inv'rs, L.C.*, 813 Fed. Appx. 39 (2nd Cir. 2020)……………....11

Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010)……….……………………………………..12

*WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 590 (S.D.N.Y. 2011)…………………………………...12

*Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184 (S.D.N.Y. 2016)………………..13

*Celine S.A. v. Hongkong CSSBUY E-Commerce Co.*, 2024 U.S. Dist. LEXIS 197474 (S.D.N.Y. 2024)…………………………………………………………………………………..…13

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010)………………………………14

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)…………………...………...……..15

*Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014)…………………………………………………….……………..15

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014)……………………………………….16

*Cartier v. Geneve Collections, Inc.*, No. CV 2007-0201 (DLI) (MDG), 2008 U.S. Dist. LEXIS 14714 (E.D.N.Y. Feb. 27, 2008)………………………..……………………………………..17

*Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 1999 U.S. Dist. LEXIS 19980 (S.D.N.Y. Jan. 3, 2000)…………………………………………………………………………………………..17

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005)…………………………………..18

*AdMarketplace, Inc. v. TeeSupport Inc.*, No. 13 Civ. 3215 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013)……………………………………………………………………...………….18

## I. INTRODUCTION

Plaintiff Fissiontech LLC ("Fissiontech" or "Plaintiff") respectfully submits this memorandum of law in support of its *ex parte* application for a temporary restraining order, asset freeze, bifurcated service, expedited discovery, and an order to show cause why a preliminary injunction should not issue (the "Application"). Plaintiff has been in the business of manufacturing and selling anti-snoring devices since 2022 and using the name Fissiontech on all their related products. Courts grant *ex parte* applications for relief in a variety of matters where intellectual property rights are threatened and Plaintiff requests that the Court grant the instant Application.

The Defendants are intentionally displaying, distributing, offering for sale, and/or reproducing merchandise strikingly similar to Plaintiff's products and misusing the brand name of Fissiontech on these listings ("the Infringing Products"). This unlawful activity is occurring within New York and throughout the United States through the Defendants' e-commerce storefronts (the "Online Storefronts"). Defendants operate the Online Storefronts through New York via their Amazon accounts, and their marketplace found at www.amazon.com ("Amazon"). The Defendants operate their Online Storefronts under their unique merchant names. Amazon, or its affiliates, internally manage and operate as a payment processor for sales that occur on Amazon.com, but also allow for payment to be processed through other financial institutions for escrow services, to collect payment from customers, to remit payment to Defendants, and/or to effectuate the transfer of revenues earned by Defendants resulting from the sales of products listed within Defendants' Online Storefronts. These other financial institutions include, but are not limited to, Amazon Pay, Paypal, Inc., Payoneer Inc., and other banks, payment processors, and money transmitters (the "Financial Institutions").

E-sellers, like the Defendants, often use evasive tactics like aliases, false addresses, and other incomplete identification information to conceal their identities and avoid detection. *See* Declaration of Yen-Yi Anderson, Esq. ¶ 15 (the "Anderson Decl."). Despite these efforts, Plaintiff was able to provide their respective storefront names and limited information concerning their identities (which may not be accurate).

Without any authorization or consent by the Plaintiff, the Defendants continue to offer for sale, sell, distribute, reproduce, and/or otherwise exploit Infringing Products through their Online Storefronts through Amazon. Plaintiff's request for *ex parte* relief is particularly necessary here. When the Defendants receive notice of this Lawsuit, it is highly likely that they will transfer , conceal, and/or destroy evidence of their infringing behavior, as well as their business records. Moreover, Defendants will likely hide, transfer, or otherwise dispose of its assets as maintained by Amazon or the Financial Institutions. Anderson Decl. ¶ 15. In preparing this lawsuit, it became apparent that certain Defendants were previously the target of Plaintiff's enforcement efforts, through sending cease-and-desist letters, and know that Amazon and the Financial Institutions will restrain their accounts and assets upon receipt of a temporary restraining order.

There are also websites, such as "Sellerdefense." (www.sellerdefense.cn/), "WeAreSellers" (www.wearesellers.com), "Sohu" (www.Sohu.com), "AMZ123" (www.amz123.com), and at least eight others (the "Websites") where users publish information concerning trademark infringement lawsuits to warn other sellers concerning Plaintiff's enforcement efforts. These Websites employ docket tracking software to learn of new intellectual property enforcement actions to thereafter publish the existence of the lawsuit, the complaint itself, the subject intellectual property, all public pleadings, and the name of the law firm and attorney representing the rights holder. There are also warnings to sellers to immediately cease their infringing

activities, liquidate their financial accounts, and change payment processors, thereby demonstrating the extent to which infringers like Defendants will purposefully evade Plaintiff;s enforcement efforts.

In light of the foregoing and considering it will take days for Amazon and the Financial Institutions to locate, attach, and freeze Defendants' assets or financial accounts, Plaintiff respectfully requests that the Court order bifurcated service, specifically allowing enough time for Amazon and the Financial Institutions to comply with the TRO, before Plaintiff commence service on Defendants.

## II. STATEMENT OF RELEVANT FACTS

The facts are contained in the factual declaration of Christopher John Baton, the CEO of Fissiontech ("Baton Decl."), and the declaration of attorney Yen-Yi Anderson, accompanying exhibits, as well as Plaintiff's Complaint.

## III. ARGUMENT

Defendants purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Fissiontech's brand reputation and common law trademarks. To stop Defendants' sale of infringing products, Fissiontech respectfully requests that this Court issue a temporary restraining order ordering, among other things, the removal of the name "Fissiontech" from all listings falsely associated with the Plaintiff and the freezing of Defendants' assets. Without the relief requested in Fissiontech's instant Motion, Defendants' illegal activity will continue unabated, and cause Plaintiff to suffer irreparable harm.

The Federal Rules of Civil Procedure ("FRCP") Rule 65(b) provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse part or that party's attorney can be heard in

opposition. Fed. R. Civ. P. 65(b). Here, the Defendants fraudulently promote, advertise, offer to sell and sell goods falsely designating Fissiontech LLC as their manufacturer via the Defendants' Internet Stores through Amazon. Defendants are creating a false association in the minds of consumers into understanding that the goods listed are manufactured by Fissiontech. Entering a temporary restraining order is appropriate because it would immediately stop the Defendants from benefitting from their wrongful use of the Fissiontech LLC common law trademarks and preserve the status quo until such a time can be heard.

If a temporary restraining order *without notice* is not granted, the Defendants can and likely will move any assets from their Amazon accounts, or any U.S.-based bank accounts. In addition, courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. As such, Fissiontech respectfully requests that this court issue the requested *ex parte* temporary restraining order.

**A. THIS COURT HAS JURISDICTION OVER ALL DEFENDANTS**

This Court has original jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C §§ 13331, 1338(a) for the claim arising out of the violation of Section 43 of the Lanham Act, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the claim arising out of violations of Sections 349 and 350 of the New York Business Law, and all other claims arising under the common law of the State of New York; and has jurisdiction pursuant to 28 U.S.C. §§1338(b) and 1367 for the claims under the common law of unfair competition and trademark infringement. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this district, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States,

including New York, through at least the fully interactive, e-commerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to New York residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including New York, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Fissiontech's trademark to residents of New York. Each of the Defendants is committing tortious acts in New York, is engaging in interstate commerce, and have wrongfully caused Fissiontech substantial injury in the State of New York.

Section 302(a)(1) of the N.Y. C.P.L.R states that “a court may exercise personal jurisdiction over any non- domiciliary ... who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state[.]” To determine whether there is a basis for personal jurisdiction under § 302(a)(1), the Court must evaluate “the totality of the defendant's activity within the forum” and whether “there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.” *Best Van Lines, Inc v. Walker*, 490 F.3d 239, 246 (2nd Cir. 2007).

Courts have long considered highly interactive websites, with certain key features, as a sufficient basis for personal jurisdiction. This includes communicating with customers, accepting orders in U.S. dollars, advertising, selling, and shipping infringing products from the online marketplaces to New York, and of course, targeting New York using e-commerce accounts through the Service Providers. *See Smart Study Co., Ltd. v. lizhiwangluo16*, Nos. 19 Civ. 7725-29, 2020 WL 3639659, at *4 (S.D.N.Y. July 6, 2020) (“[Defendants] have transacted business within the state [under § 302(a)(1)] by virtue of [their] operation of online user accounts and

merchant storefronts through which customers in New York can view and purchase the counterfeit products at issue in this case."); *Pearson Educ., Inc. v. ABC Books, LLC*, No. 19 Civ. 7642 (RA), 2020 WL 3547217, at *6 (S.D.N.Y. June 30, 2020) ("… online marketplaces like eBay and Amazon are highly interactive websites that are widely available to United States customers, including those located in New York, and thus can serve as the basis for personal jurisdiction."); *Smart Study Co., Ltd. v. A Pleasant Trip Store*, No. 20 Civ. 1733 (MKV), 2020 WL 2227016, at *2-3 (S.D.N.Y. May 7, 2020) (operation of online marketplaces on Alibaba were highly interactive websites supporting personal jurisdiction); *Nat'l Hockey League v. Hockey Cup, LLC*, No. 18 Civ. 6597 (DLC), 2019 WL 130576, at *6 (S.D.N.Y. Jan. 8, 2019) ("[Defendants] have transacted business in New York by operating interactive websites through which consumers in New York can purchase [products]."). This Court has recently emphasized that if an individual/business chooses to operate an interactive website accessible in New York, "there is no inequity in subjecting [the individual/business] to personal jurisdiction here." *Mattel, Inc. v. Animefun Store*, No. 18 Civ. 8824 (LAP), 2020 WL 2097624, at *4 n.7 (S.D.N.Y. May 1, 2020). In Mr. Baton's investigation, he accessed and viewed each of the Defendants' respective Online Storefronts and listings containing an Infringing Product. Baton Decl. ¶ 15. Upon viewing the Infringing Product, he was able to add the Infringing Products to an online shopping cart, enter a New York address, and enter payment and other data required to complete the transaction. *Id.*

Defendants have made a clear and direct intention to target New York by creating a storefront operated through Amazon, who does substantial business in New York, Defendants are transacting business with Amazon, in order to operate their Online Storefronts. Amazon provides a service to the Defendants and Defendants remit payment to Amazon for the ability to

offer for sale and sell the Infringing Products. In sum, Defendants' use of Amazon to conduct business and offer for sale the Infringing Products are volitional and purposeful acts Defendants and the instant claims of trademark infringement arise through their business activities with Amazon.

**B. PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER**

Here, an *ex parte* temporary restraining order is essential to prevent immediate and irreparable injury. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b).

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore infringers who conceal their identities and engage in unlawful and harmful activities over the Internet so as to avoid revealing their actual locations and identities. Many of the Defendants are overseas, while others, suspectedly, only list the location of their U.S. based drop-shipping production partner. This is done knowingly and willfully through their Online Storefronts in an attempt to appear more legitimate or to otherwise conceal their identities. The covert nature of Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility. The immediate and irreparable harm to Plaintiff's trademark in denying its Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for and sale its multitude of infringing products.

The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc*., 965 F.2d 1224, 1228 (2d Cir. 1992). A party seeking a preliminary injunction is generally required to show (i) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, (ii) that the moving party is likely to suffer irreparable injury in the absence of a preliminary injunction, (iii) a balance of the hardships tipping in favor of the moving party, and (iv) that the public interest would not be disserved by the issuance of a preliminary injunction. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010).

## I. Fissiontech Will Likely Succeed on Its Common Law Trademark Claims

Trademark registration is not required for using, owning, or suing others for infringing a trademark. *Iancu v. Brunetti*, 588 U.S. 388 (2019). The plaintiff, Fissiontech, is in the process of acquiring the federal registration of their trademark, but currently are bringing suit under their common law trademark rights.

The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act, 15 U.S.C.S. § 1051 et seq., claims, "[t]hat is, to prevail on a statutory or common law claim of trademark infringement, a party must establish that the symbols for which it seeks trademark protection are valid, legally protectable marks and that another's subsequent use of a similar mark is likely to create confusion as to the origin of the product." *LBF v. Fareportal, Inc.*, 2014 U.S. Dist. LEXIS 156583, at *8 (S.D.N.Y. 2014); *Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999); *see also Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982).

Fissontech's brand name is protectable as a word mark. To be protectable, a trademark must be distinctive, used in commerce, and not cause confusion with existing trademarks. 15 U.S.C. § 1127. Distinctiveness is divided into four categories: (1) arbitrary/fanciful, (2) suggestive, (3) descriptive, (4) generic. *See Zatarain's, Inc. v. Oak Grove SmokeHouse, Inc.*, 698 F.2d 786 (5th Cir. 1983) (Determining that if a mark is categorized as either arbitrary/fanciful or suggestive, it is considered to be inherently distinctive and exclusive rights to the mark are determined solely by priority of use.) The brand name Fissiontech falls under the first category of arbitrary/fanciful because the name is a made-up word that does not suggest what products are produced. Baton Decl. ¶ 3. Therefore, it is inherently distinctive. Fissiontech has been selling their products on Amazon and other online marketplaces since 2022. Baton Decl. ¶3. Finally, through a determinative search on the USPTO's public trademark database, the only "Fissiontech" listed is the plaintiff's pending registry. Anderson Aff. ¶ 28. Therefore, Fissiontech is entitled to common law trademark protection.

The Defendants' misuse the brand name Fissiontech on their listed products on Amazon which are substantially/strikingly similar to the anti-snore devices that Plaintiff produces. The Defendants' use covers either listing Fissiontech as the *manufacturer* of the products or including the brand's name within their item description. Fissiontech has not consented or licensed out the use of their name. This misuse and improper affiliation is likely to confuse consumers as to the origin of the product. *See 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir, 2005). The Defendants are likely to be found liable for their wrongful inclusion of the protected name Fissiontech on their infringing listings.

II. <u>Fissiontech Will Likely Succeed on Its False Designation of Origin and Federal Unfair Competition</u>

A plaintiff bringing a false designation of origin under 15 U.S.C. §1125(a) must show that (1) it holds a valid trademark entitled to protection and (2) there is a "likelihood of confusion." *Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 730 (S.D.N.Y. 2004) (Chin, J.) (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)).

The argument for the valid trademark has been analyzed under the common law trademark claim and the articulated reasoning carries over here. The Defendants' improper use of the brand name Fissiontech LLC in their listed products is likely to cause confusion. Fissiontech, which primarily manufactures and sells anti-snoring devices has been in this business for several years. Baton Decl. ¶ 3. The business prides itself on having FDA Premarket Notification 510(k) Certification and advertises their products to have this high level of clearance. Baton Decl. ¶ 6. It took several years to obtain this Certification, and plaintiff's estimate spending nearly $150,000 throughout the process. Baton Decl. ¶ 6. Fissiontech lists their anti-snoring products on the same online marketplace, Amazon, as the Defendants list theirs. Baton Decl. ¶ 3. If a consumer were to search for Fissiontech's anti-snoring devices on Amazon, they would be confused at the purported association that Defendants' have created between their own brand and Fissiontech's. In fact, when Plaintiff, searched "anti-snore devices Fissiontech" on Amazon, some of the first products to appear were that of the schedule of Defendants before Fissiontech's own product. Baton Decl. ¶ 16. These Defendants are unlawfully capitalizing on Fissiontech's market authorization and established brand reputation, misleading consumers into believing that Fissiontech is the manufacturer of these products. In reality, Fissiontech has no involvement with, or knowledge of, the production of these goods, nor any confirmation that they have received FDA clearance.

For all the foregoing reasons, Fissiontech is likely to succeed on its false designation of origin claim.

## III. Fissiontech Will Likely Succeed on Its Deceptive Acts and Practices Unlawful in Violation of the New York General Business Law Claim

Pursuant to New York General Business Law § 349(a), "[d]eceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state are hereby declared unlawful." Similarly, under § 350, "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful." The Defendants' use of the name "Fissiontech LLC" in connection with their products constitutes a deceptive business practice and false advertising under these provisions.

By using the Fissiontech name, Defendants create a false association between their products and the Plaintiff, misleading consumers into believing there is an affiliation or endorsement. This misrepresentation is particularly egregious because the Defendants' products lack FDA clearance, whereas Plaintiff's products are FDA-cleared. Such conduct not only deceives consumers but also harms Plaintiff's reputation and goodwill by associating its name with potentially non-compliant or unsafe products. The Defendants are exploiting consumer trust in the Fissiontech brand to market their products, thereby engaging in unlawful practices under §§ 349 and 350.

## IV. Plaintiff Will Suffer Irreparable Harm Absent Immediate Relief

In the context of a preliminary injunction in a trademark infringement case, irreparable harm refers to harm that (a) affects the parties' legal interests and (b) cannot be remedied after a final

judgment, either by damages or a permanent injunction. *Really Good Stuff, LLC v. BAP Inv'rs, L.C.*, 813 Fed. Appx. 39, 39 (2nd Cir. 2020). Courts have consistently found that the loss of reputation and goodwill constitutes irreparable harm. *Id.* When unlawful use and consumer confusion are demonstrated, a finding of irreparable harm is automatic. *Id.*

Defendants' infringing activities must be stopped immediately to prevent further harm to Plaintiff, which is likely to be incalculable. Specifically, the continued sale of infringing products bearing Plaintiff's trademark would reach a point where the harm becomes impossible to quantify. Plaintiff's brand has cultivated a loyal customer base through careful attention to product quality and integrity. Moreover, Plaintiff's products are FDA market-cleared, providing a significant distinction from Defendants' products, which lack any such clearance. Defendants are selling anti-snoring devices on Amazon that bear striking similarity to Plaintiff's products, exacerbating consumer confusion and undermining the trust that Plaintiff has built with their customers. This continuing infringement further threatens to dilute Plaintiff's brand reputation and goodwill, and the harm caused by this infringement cannot be compensated by damages alone.

Similarly, the harm caused by Defendants selling infringing products is unmistakable. With each additional sale or listing, the infringement perpetuates and deepens the damage to Plaintiff's rights. Each act of unauthorized sale or distribution directly undermines the value of Plaintiff's intellectual property, and the harm caused by such ongoing violations is inherently difficult to quantify. This kind of harm is often deemed irreparable in trademark and copyright cases, as it extends beyond the mere financial losses that can be calculated. *See Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010); *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 590, 620 (S.D.N.Y. 2011).

Defendants' actions inevitably create growing consumer confusion about the true source of Plaintiff's products. Consumers may mistakenly purchase infringing items, believing they are authorized or licensed, which diminishes the value of Plaintiff's trademark. This confusion can also deter future customers from trusting the authenticity of Plaintiff's legitimate products. As a result, Defendants' actions erode the goodwill and reputation that Plaintiff has spent years cultivating. If Defendants continue, Plaintiff will have no way to stop further exploitation or infringement of their work.

The risk of future infringement is another critical concern. If Defendants are not enjoined, they will keep offering infringing products without facing consequences. Courts in this Circuit have repeatedly ruled that monetary damages alone are insufficient when defendants pose a significant risk of continuing their unlawful activities. Defendants will likely resume their infringing behavior unless the Court orders them to stop. *See Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016).

Furthermore, because many Defendants operate outside the United States, they will likely be unable or unwilling to satisfy any potential damages award. This increases the risk of irreparable harm. Defendants who operate internationally or in the e-commerce space often evade judgment or refuse to pay damages. See *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012). Plaintiff should not have to bear the consequences of Defendants' unlawful actions simply because Defendants profit from U.S. consumers while avoiding accountability for the harm they cause.

V. The Balance of Hardship Favors Plaintiff

The balance of hardships overwhelmingly favors Plaintiff. As detailed above, Plaintiff has already suffered, and will continue to suffer, irreparable harm to their brand and reputation due to

Defendants' willful sale of infringing products. In contrast, any harm Defendants might experience would be limited to the loss of their ability to continue selling their products that infringe on others' rights and courts have routinely held "[i]t would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [Plaintiffs'] brand." *Celine S.A. v. Hongkong CSSBUY E-Commerce Co.*, 2024 U.S. Dist. LEXIS 197474, at *3 (S.D.N.Y. 2024).

**IV. Enjoining Defendants from Selling Infringing Products Will Serve the Public Interest**

Issuing a temporary restraining order and preliminary injunction will undoubtedly serve the public interest. First, consumers are likely purchasing the infringing products sold by the Defendants under the mistaken belief that they are associated with or manufactured by Fissiontech LLC. Fissiontech has built a loyal customer base and is widely recognized for its high-quality, FDA-cleared products. In contrast, Defendants have seemingly exploited Fissiontech's reputable brand by mislabeling their own products with Fissiontech's name.

This practice of misrepresentation not only deceives consumers but also undermines their ability to make informed purchasing decisions. A good faith purchaser, without any means of verifying the true source of the products, would be unaware that the Defendants' items are not FDA-cleared and have no legitimate association with Fissiontech. The public has a clear interest in being protected from such deceptive practices, as it ensures consumers are not misled and can trust that the products they purchase meet the standards they expect.

**C. PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANT'S STOREFRONT**

I. Defendants' Assets Must be Frozen

Given the nature of Defendants' operations and Plaintiff's strong likelihood of prevailing on the merits of their trademark infringement claims, Plaintiff is entitled to either actual damages or statutory damages, at their election. In either case, the profits earned by Defendants are highly relevant. If Plaintiff pursues actual damages, a full accounting of Defendants' revenues and profits is essential. Alternatively, if statutory damages are sought, courts consider several key factors in determining an appropriate award—including the profits realized and costs avoided by the infringer, as well as the financial harm suffered by the rights holder. *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Accordingly, Plaintiff requests an order freezing Defendants' assets and compelling disclosure of asset information held by Amazon and the relevant Financial Institutions. Plaintiff further seek an attachment of those assets and an injunction barring any transfer of funds to or from accounts outside the custody or control of Amazon and the Financial Institutions. Such relief is both justified and necessary in light of the facts at hand.

An asset freeze is especially critical in this case because most Defendants appear to be located overseas and operate anonymously, offering little or no verifiable information on their storefronts. In most instances, whatever limited contact information is listed has been self-reported, with no assurance of its accuracy or legitimacy. Defendants have already taken steps to conceal their identities, and there is a strong likelihood they will attempt to move or conceal funds to frustrate enforcement efforts and avoid accountability.

In light of these circumstances, Plaintiff respectfully urges the Court to exercise its inherent equitable authority to issue an asset freeze against Defendants, targeting funds held by Amazon and the identified Financial Institutions. Such relief is necessary to preserve the status quo, ensure that a meaningful accounting of profits can be made, and prevent Defendants from evading judgment by dissipating their unlawfully obtained proceeds.

II. Defendants' User Accounts and Online Storefronts Must be Frozen

A temporary restraining order and preliminary injunction restraining Amazon and the Financial Institutions from providing services to Defendants' accounts and storefronts is both warranted and necessary. Defendants continue to display, offer for sale, and sell infringing products, and this ongoing conduct poses an imminent threat of irreparable harm to Plaintiff, including damage to their reputation, loss of consumer goodwill, and diversion of sales. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014).

Restraining only specific URLs or product listings is inadequate, as Defendants can easily circumvent such limitations by creating new listings or storefronts under the same infringing branding. Broader restraints on entire accounts and associated financial services are necessary to effectively stop the infringing conduct, preserve the status quo, and ensure compliance with the Court's order.

**D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED SERVICE AND ALTERNATIVE SERVICE UPON THE SERVICE PROVIDERS AND FINANCIAL INSTITUTIONS**

Plaintiff respectfully requests that the Court authorize service of its Order granting this Application upon Amazon and the relevant Financial Institutions prior to service upon Defendants, and with sufficient time to allow these third parties to comply with the Court's directives. This relief is necessary to prevent the Defendants from concealing or dissipating evidence or assets in response to notice of this action.

If Plaintiff is required to serve Defendants before the restraints and information requests are effectuated, Defendants could act swiftly to delete records, deactivate storefronts, or transfer funds out of reach of enforcement—frustrating the purpose of this Court's intervention. Accordingly, Plaintiff respectfully requests that service upon the Defendants not be attempted until after Amazon and the Financial Institutions have: (i) confirmed the freezing of Defendants' accounts, and (ii) provided identifying information, including contact details, to Plaintiff's counsel.

Additionally, Plaintiff requests leave to serve Amazon and the Financial Institutions via registered e-mail, utilizing a service such as www.RMail.com, which provides timestamped proof of delivery, receipt, and content. This method of service is both reliable and expeditious, and courts in the Second Circuit routinely permit alternative service under Rule 45 when it is "reasonably calculated" to ensure actual notice to the subpoenaed party. *See Cartier v. Geneve Collections, Inc.*, No. CV 2007-0201 (DLI) (MDG), 2008 U.S. Dist. LEXIS 14714, at *1 (E.D.N.Y. Feb. 27, 2008) (noting that "delivery" under Rule 45 includes any manner of service reasonably designed to ensure actual receipt); *see also Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200, 1999 U.S. Dist. LEXIS 19980, at *2 (S.D.N.Y. Jan. 3, 2000) (holding that alternative service by certified mail met the delivery requirement of Rule 45).

Because registered e-mail service through RMail provides verifiable and timestamped confirmation of sending, delivery, and receipt, it is more than sufficient to satisfy Rule 45's notice requirement. Therefore, alternative service via registered e-mail "reasonably insures actual receipt." *Cordius* at *2.

**E. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY**

Plaintiff respectfully requests that the Court grant leave to conduct expedited third-party discovery directed to Amazon and relevant financial institutions. This discovery seeks to determine the scope and extent of Defendants' infringing activities, identify the individuals responsible, and preserve vital electronic evidence that may otherwise be lost or destroyed.

Under Federal Rule of Civil Procedure 26(d)(1), a party may not seek discovery before the Rule 26(f) conference unless authorized by court order. Courts in this Circuit apply a flexible "good cause" standard in determining whether early discovery is appropriate. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (noting that courts examine early discovery requests based on "the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances"). Where, as here, a plaintiff seeks to identify unknown defendants or preserve electronic evidence, courts routinely permit such discovery. *See AdMarketplace, Inc. v. TeeSupport Inc.*, No. 13 Civ. 3215 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013).

Here, Plaintiff seeks limited, narrowly tailored discovery from Amazon and the Financial Institutions to obtain identifying information for each Defendant, including names, mailing and

e-mail addresses, IP logs, and details concerning any associated user accounts, storefronts, or financial accounts. Plaintiff also seeks access to sales histories related to the infringing products, which bear directly on jurisdictional questions and the scope of the harm caused.

This discovery is necessary both to prosecute this action and to prevent the destruction or concealment of critical electronic evidence. Much of the relevant information—such as sales history, account details, and user communication—is stored on third-party servers controlled by Amazon and other platforms, which may be subject to regular purging, deactivation, or deletion policies. Without immediate intervention, there is a significant risk that such data could be lost either through routine systems maintenance or through deliberate acts by Defendants seeking to avoid liability.

Given these concerns, Plaintiff has demonstrated good cause to warrant expedited discovery. The information sought is directly relevant to the claims in this action and is necessary to determine Defendants' true identities, locations, and activities. It will also allow Plaintiff to evaluate the full extent of the harm and assess jurisdictional issues more accurately.

Accordingly, Plaintiff respectfully requests that the Court enter an order permitting expedited

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted, *ex parte*, in its entirety.

DATED: April 22, 2025

*/s/ Yen-Yi Anderson*
Yen-Yi Anderson, Esq.
Anderson & Associates Law, P.C.
61 Broadway, Suite 2809
New York, NY 10006
646-403-9767
y.anderson@aalawpc.com